Jerry Michael EDWARDS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–857.

Court of Criminal Appeals of Oklahoma.

July 11, 1991.

Gloyd L. McCoy, Deputy Appellate Public Defender, Norman, for appellant.

Robert H. Henry, State Atty. Gen. and Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Vice–Presiding Judge:

The appellant, Jerry Michael Edwards, was tried by jury for the crimes of Robbery With Firearms (21 O.S.1981, § 801) and two counts of Kidnapping (21 O.S.1981, § 741), After Former Conviction of Two or More Felonies in Oklahoma District Court, Case No. CRF–86–267. The defendant appeared *pro se,* the jury returned a verdict of guilty, and in accord with the jury verdict the trial court sentenced appellant to ninety-nine (99) years imprisonment on each count with the sentences on the kidnapping counts to run concurrently. The state concedes that the conviction on the kidnapping charges violated the appellant's constitutional right to due process because the appellant was charged under 21 O.S.1981, § 741(3) (to sell into slavery or hold to service) but the jury was instructed by the trial court under § 741(1) (secret confinement or imprisonment) and consequently the two counts of kidnapping must be reversed. Appellant raises four additional arguments which we will address, that the kidnapping charges merged into the charge of armed robbery, thus conviction on all of the charges is barred by the prohibition against double jeopardy; that the trial court should not have allowed him to proceed *pro se;* prosecutorial misconduct; and juror bias. We affirm the judgment and sentence for robbery with firearms after former conviction and reverse and remand for new trial the charges of kidnapping.

Sixty-eight year old Thomas Watson and sixty year old Ola Dean Watson operate a cellophane and plastic bag business out of their garage in Oklahoma City. On the evening of November 26, 1985, they expected a customer to pick up an order of bags. When the appellant rang their doorbell Mr. Watson let him in and asked him if he was the customer. In reply the appellant stuck a gun in Watson's face. A short struggle ensued. The appellant then pulled Watson's pocket inside-out and caused the contents, his money and false teeth, to fall out. Appellant took the money. Mrs. Watson entered the room and the appellant stuck the gun up against her stomach. The ap-

pellant then bound them with duct tape. The appellant forced Mrs. Watson to show him where the home safe was located. She did, but she could not open it. Mr. Watson opened it on the third try. The appellant then loaded the Watson's personal property into Mrs. Watson's car and left. The Watson's were able to free themselves and they called the police.

■ The State concedes the conviction on the counts of kidnapping must be reversed and urges that the Court remand these counts for new trial under the authority of 22 O.S.1981, § 1067 which provides:

> ... [I]f it appears that the defendant is guilty of an offense although defectively charged in the indictment, the [Court of Criminal Appeals] must direct the prisoner to be returned and delivered over to the jailer of the proper county, there to abide the order of the court in which he was convicted.

The appellant argues on double jeopardy grounds that the charges must be dismissed.

■ Under both the state and federal constitutions retrial under certain circumstances is barred by the prohibition against double jeopardy. Okla.Const. art. II, § 21; U.S. Const. amend. V. Jeopardy attaches when a conviction must be overturned due to insufficiency of the evidence, *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and it bars successive trial if the offense charged in the second trial is the same in law and fact as the offense charged in the first trial. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

We addressed this double jeopardy in *Carter v. State*, 764 P.2d 206 (Okl.Cr.1988). In that case, the defendant was also charged with kidnapping by holding to service against her will but convicted of kidnapping by secret confinement. *Id.* at 208. The majority of the Court held that Section 1067 did not allow the court to remand for retrial, reasoning that such would violate the United States Constitution.

The Constitution controls over conflicting statutory authority. *See Marbury v. Madison*, 5 U.S. (1 branch) 137, 2 L.Ed. 60 (1803). The double jeopardy clause of the Fifth Amendment precludes a second trial once a reviewing court finds the evidence legally insufficient and the only just remedy available is a direction of a judgment of acquittal. *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150-51, 57 L.Ed.2d 1 (1978). *Id.* This reasoning is based on the underlying conclusion that the fundamental problem of a defective information is transformed into an evidentiary insufficiency following trial.

However, the United States Supreme Court reached a different conclusion in *Montana v. Hall*, 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987). In that case the court held that the successful appeal of a judgment on any ground other than the insufficiency of the evidence to support the verdict does not trigger the Double Jeopardy Clause of the federal constitution and an incorrect charge in the Information poses no bar to further prosecution on a related charge.

■ In *Hall* the appellant was originally charged with sexual assault of his stepdaughter and at preliminary hearing the State amended the Information and tried him for incest. On appeal following his conviction the appellant successfully argued the incest statute did not apply, for at the time of the crime it did not include sexual assault by a step-parent. The Montana Supreme Court held jeopardy had attached because under *Brown, supra* the second trial for sexual assault would be the same in law and fact as the first trial for incest. The Supreme Court disagreed, finding "no reason why the State should not be allowed to put respondent to a trial on the related charge of sexual assault. There is *no suggestion that the evidence introduced at trial was insufficient to convict respondent*". 481 U.S. at 402, 107 S.Ct. at 1827, 95 L.Ed.2d at 356. (emphasis added). We find that at the current time the state constitutional prohibition against double jeopardy is coextensive with that of the federal constitution, and expressly overrule *Carter* to the extent it is inconsistent with our present holding.

We are deeply concerned with the number of cases which come before us in which the appellant has been charged with the wrong crime. While in some cases this may be understandable due to particularly complex facts, or the natural development of a case as it is prepared for trial, it more often than not appears to be the result of inattention or carelessness on the part of the State. We must make clear that this Court will not grant, and in this decision has not granted the State *carte blanche* to make repeated attempts to convict an individual for an alleged offense, and thereby subject him to the embarrassment, expense, ordeal, and continuing state of anxiety and insecurity brought on by successive prosecution; nor will we be a party to enhancing the possibility that even though innocent a defendant may, through repeated prosecution, be found guilty. *See Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

■ The appellant raises a second double jeopardy argument, that he may not be prosecuted for both kidnapping and robbery with a firearm, for the kidnapping merges into the crime of robbery. Our recent case *Turner v. State*, 786 P.2d 1251 (Okl.Cr.1990) is dispositive of this argument. Therein, we explained that when the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. *Id.* at 1253. If each statutory provision requires proof of a fact that the other does not, this test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. *Id.* In the present case the crimes of kidnapping and robbery with a firearm each required proof of elements separate and distinct from the proof required for the other crime. *See*, 22 O.S.1981, §§ 741 and 801. We find no double jeopardy problem here.

■ Appellant next argues the trial judge erred in allowing him to proceed *pro se*. When the appellant announced immediately prior to trial that he did not want to be represented by the public defender and wanted to represent himself, the trial judge questioned him on the record for some fifteen (15) minutes regarding this choice. After being satisfied that the appellant knowingly and voluntarily waived counsel, the trial judge allowed the public defender to remain with the appellant during trial to respond to his tactical questions. Incidentally, we note this consulting arrangement was of true benefit to the appellant for the trial court allowed appointed counsel to interrogate a juror who, in the middle of trial, revealed she might know one of the witnesses and attended the same church as the district attorney. This Court has not imposed a laundry list of factors which the trial court must address when accepting a waiver of counsel, and we decline to do so now. Rather, we have held that the trial court must make a defendant aware of the problems of self-representation, and must establish on the record that the defendant understands that his actions in proceeding without counsel may be to his ultimate detriment. *See Johnson v. State*, 556 P.2d 1285 (Okl.Cr.1976), *Dunnum v. State*, 646 P.2d 613 (Okl.Cr.1982). On the record before us we find that the appellant was both aware of the problems of self-representation, and understood that proceeding *pro se* was possibly to his ultimate detriment.

■ At trial the appellant did not object to comments made by the prosecutor which he now argues constitute misconduct. Having failed to lodge a timely objection, the appellant has waived all but fundamental error. *Harris v. State*, 777 P.2d 1359 (Okl.Cr.1989); *Quilliams v. State*, 779 P.2d 990 (Okl.Cr.1989); *Hunt v. State*, 793 P.2d 1366 (Okl.Cr.1990). We have reviewed all the comments now objected to, as well as the record as a whole, and find that the comments did not interject fundamental unfairness into the appellant's trial. We find no fundamental error, and reject this argument.

■ As his final proposition of error, the appellant argues the trial court erred by failing to grant a mistrial when one of the jurors revealed she attended the same church as the prosecutor, and may have

treated one of the victims in her professional capacity as a nurse. This juror stated unequivocally that these facts would not affect her decision in this case. The appellant urges us to disregard the juror's statement and presume prejudice. This position is not supported by Oklahoma law. This Court has held consistently that when an appellant requests a new trial based on juror misconduct, the appellant bears the burden of showing both juror prejudice and harm as a result of the juror's service. *See Wagers v. State*, 370 P.2d 567 (Okl.Cr. 1962); *Johnson v. State*, 597 P.2d 340 (Okl. Cr.1979). The appellant makes no showing of actual harm.

The appellant directs our attention to several cases in which we found the juror unfit for service and reversed for juror bias after the trial judge denied a defendant's motion for mistrial. These cases indicate that juror bias will be found where the juror conceals information which should have been revealed during voir dire, or the juror states that he or she is prejudiced due to the relationship with the given person.[1]

In the present case juror D.M. came to the trial judge and advised him that she thought she recognized the hands of one of the victims who had testified the day before and might have treated him in her professional capacity as a nurse. She also stated that she recognized a woman who was present in the Courtroom on the previous day, but initially could not place how she knew her. In the middle of the night she woke up and pictured the woman walking up the church aisle for communion. She got her church directory, found a picture of the woman and discovered she was married to the district attorney trying the case. She did not remember ever seeing the district attorney, or having any personal contact with his wife. D.M. emphatically

stated that neither the fact that she may have treated the victim, or that the district attorney went to her church affected her judgment, and she believed she could remain impartial. Appellant moved for a mistrial which was denied by the trial court.

This case is readily distinguishable from the cases which have required reversal on this issue. The juror did not knowingly conceal any relevant information during voir dire. She came forward as soon as she was aware of a possible conflict, and she stated that she was sure her judgment would not be biased. Her contact with the victim was so remote, that she was not positive she had treated him, and she was quite sure she had never spoken with him. Her contact with the district attorney was even more remote. . She vaguely recognized his wife, but did not remember ever seeing him prior to trial. Under some set of facts a common church membership, or treating a victim of a crime could well cause impermissible bias, but we do not find that to be the case here.

We REVERSE and REMAND the counts of kidnapping to the district court for new trial, and finding no error which warrants reversal or modification of the judgment and sentence for Robbery With Firearms, we AFFIRM this count.

PARKS, Presiding Judge, concurring in part/dissenting in part:

I first wish to voice my disagreement with the majority's treatment of appellant's second double jeopardy argument. It continues to be the opinion of this writer "that the 'same transaction' test for double jeopardy, as skillfully explained by Justice Brennen in *Ashe v. Swenson*, 397 U.S. 436, 448, 90 S.Ct. 1189, 1197, 25 L.Ed.2d 469

---

1. *See Enriquez v. State*, 740 P.2d 1204 (Okl.Cr. 1987) (juror admits bias against alibi witness who is her husband's ex-wife and who forged check which husband cashed against juror's bank account and with whom husband engaged in an extra-marital affair and fathered a child); *Bass v. State*, 733 P.2d 1340 (Okl.Cr.1987) (juror conceals fact that important State's witness was his sister's fiance); *Tibbetts v. State*, 698 P.2d 942 (Okl.Cr.1985) (juror conceals fact she is the mother-in-law of a deputy sheriff who was trying to gain employment with the District Attorney's Office at the time of trial, and who observed the trial, and that her daughter recently had been the victim of a sex crime; Tibbetts was tried for kidnapping a twelve year old girl and committing sex crimes against her); *Manuel v. State*, 541 P.2d 233 (Okl.Cr.1975) (venireman conceals fact he is married to the chief secretary of the District Attorney).

(1970), is eminently correct, and affords the proper interpretation of both the Fifth Amendment to the U.S. Constitution and article 2, section 21 of the Oklahoma Constitution." *Stohler v. State ex rel. Lamm,* 696 P.2d 1038, 1041 (Okl.Cr.1985) (Parks, P.J., dissenting). However, I yield my view to that of the majority of this Court on the basis of *stare decisis.* Accordingly, I must concur in the affirmance of appellant's conviction for Robbery With a Firearm.

With respect to appellant's first double jeopardy argument, I agree that the kidnapping convictions must be reversed, but I respectfully dissent to remanding the same for new trial. In *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the Supreme Court distinguished between "trial error" and "evidentiary insufficiency" for purposes of double jeopardy claims. Where a reviewing court determines that a convicted defendant has been deprived of a fair trial on the basis of trial error, that court may remand the cause for new trial. However, a case reversed due to evidentiary insufficiency must, under the Double Jeopardy Clause of the Fifth Amendment, be dismissed.

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect....

> \* \* \* \* \* \*

> The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble.

*Id.,* 437 U.S. at 15–16, 98 S.Ct. at 2149–50.

In overruling *Carter* to arrive at its ultimate conclusion, the majority herein apparently finds that the reversal in this case is based upon a defective information[1] and not insufficiency of the evidence presented at trial. I find that the majority's reliance upon *Montana v. Hall,* 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987), is misplaced and that such case may easily be distinguished from the case at bar.

The defendant in *Hall* was charged and convicted of incest. As stated by the majority, Hall's conviction was not reversed because of insufficiency of the evidence to prove the crime of incest, but because incest by its definition at the time of trial did not apply to the defendant. Stated otherwise, the crime of incest as was then defined by statute was *legally inapplicable* to defendant Hall's conduct. Indeed, such legal inapplicability would have required the dismissal of the State's Information had Hall properly raised such by motion before trial.

By contrast, the "inapplicability" of the crimes charged in the present case was *factual,* not legal. The reason for reversal of appellant's convictions for kidnapping are because the State could not present facts sufficient to prove that appellant held his victims to service against their will. Their has been no allegation that the Information so charging appellant was defective in any respect, except that it charged him with the wrong crime. Again, a crime that was *factually,* not *legally,* inapplicable to appellant's conduct. It is utterly inconceivable that such a mistake on the part of the charging authority can fairly be considered as the type of information/indictment defect contemplated by the Supreme Court in deciding *Burks* and its progeny. Rather, it is my opinion that the State presented insufficient evidence to prove the crimes charged. Although the district attorney erroneously charged appellant with such crimes, the Information so charging him was without defect. Accordingly, I dissent to the overruling of *Carter* and to this

---

1. A defective indictment has been cited by the Supreme Court as an example of "trial error."

*Burks,* 437 U.S. at 14, 98 S.Ct. at 2148.

Court's decision to remand appellant's kidnapping charges for new trial.